UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA M.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>　　　　　　　　　Defendant. | Case No.: 18cv2362-WQH-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: MOTION FOR SUMMARY JUDGMENT AND MOTION TO REMAND**<br><br>**[ECF Nos. 11, 15]** |

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Plaintiff Cecilia M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Commissioner of the Social Security Administration ("Commissioner"). (ECF No. 1 at 1-2).[2] The final administrative decision of the Commissioner denied Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act ("Title XVI"). (AR 37).[3]

For the reasons set forth herein, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (ECF No. 11-1) be **DENIED**, Defendant's Motion to Remand be **DENIED**, and the Commissioner's decision finding Plaintiff not disabled and denying Supplemental Security Income be **AFFIRMED**.

# I. BACKGROUND

Plaintiff was born on October 27, 1964. (AR 219). At the time the instant application was filed on November 29, 2012, Plaintiff was 48 years-old, which categorized her as a younger person. 20 C.F.R. §§ 404.1563, 416.963. Plaintiff subsequently changed age categories to closely approaching advanced age. 20 C.F.R. 416.963.

## A. Procedural History

On November 29, 2012, Plaintiff protectively filed an application for a period of Supplemental Security Income under Title XVI. (AR 37). The application alleged a disability beginning September 5, 2003, but Plaintiff amended her alleged disability onset date to October 27, 2014 at the administrative hearing before an administrative law judge ("ALJ"). (AR 37, 56, 219). After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an ALJ. (AR 37). An

---

[2] All pincite page references refer to the automatically generated ECF page number, not the page number in the original document.
[3] "AR" refers to the Certified Administrative Record filed on February 13, 2019. (ECF Nos. 9, 10).

administrative hearing was held on March 17, 2016. (*Id.*). Plaintiff appeared and was represented by attorney John B. Martin. (AR 54). Testimony was taken from Plaintiff and from impartial vocational expert ("VE") Kathleen Macy-Powers (AR 54, 306). On May 3, 2016, the ALJ issued a decision finding Plaintiff not disabled from October 27, 2014 through the date of the decision and therefore denied Plaintiff's application for supplemental security income. (AR 37-48).

On June 13, 2016, Plaintiff sought review with the Appeals Council. (AR 4). On August 21, 2018, the Appeals Council denied Plaintiff's request for review and declared the ALJ's decision to be the Commissioner's final decision in Plaintiff's case. (AR 1). This timely civil action followed.

On May 16, 2019, Plaintiff filed a Motion for Summary Judgment, arguing the ALJ improperly considered the accommodations an employer must make to allow for a dog to be present in the workplace. (ECF No. 11-1). On August 15, 2019, Defendant filed a motion to remand, contending that the ALJ improperly included an ADA accommodation in assessing Plaintiff's Residual Functional Capacity ("RFC") and that the accommodation is not medically necessary. (ECF No. 15-1). In opposition, Plaintiff avers that the RFC is correct and that remand is only warranted if it is limited to re-evaluating step five of the sequential evaluation process. (*See* ECF No. 18). In reply, Defendant maintains that remand without limitation is required. (ECF No. 20).

## II. DISCUSSION

### A. Legal Standard

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial

review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. *Id.*; *see also Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence means "more than a mere scintilla but less than a preponderance. . . ." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Batson*, 359 F.3d at 1193. When the evidence is inconclusive, "'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusion, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Batson*, 359 F.3d at 1193. Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

**B. Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the

4

ALJ found that Plaintiff had not engaged in substantial gainful employment since October 27, 2014. (AR 39).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and anxiety (20 C.F.R. § 416.920(c)). (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 40) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926)).

Next, after considering the entire record, the ALJ determined that Plaintiff had the RFC "to perform unskilled sedentary or light work as defined in 20 CFR 416.967(b) with the following modifications:"

> lift and carry no more than five to 10 pounds at a time; lift and carry no more than five to 10 pounds occasionally; sit 10 to 15 minutes at a time; stand and walk 10 to 15 minutes at a time; requires a sit/stand option every 10 to 15 minutes; sit for a total of six out of eight hours; stand and walk for a total of six out of eight hours; occasional stooping, bending, twisting or squatting; no kneeling, crawling or crouching; cannot climb or descend a full flight of stairs, but can go up or down a few stairs; no overhead reaching or lifting; frequent reaching, handling and fingering; and claimant requires a low stress work setting or work environment – which means an office type work setting in an office with no wide/open spaces (e.g. no work in a large area like an airplane hangar or outdoors and no large, high ceilinged warehouses or factories); and *must have the option to have with her, on the job, a small companion dog.*

(AR 41) (emphasis added).

The ALJ then proceeded to step four of the sequential evaluation process and found Plaintiff had no past relevant work. (AR 46). For the purposes of his step five determination, the ALJ accepted the testimony of

5

the VE. The ALJ determined that Plaintiff could perform the job of office helper (DOT code 239.567-010) identified by the VE that exists in significant numbers in the national economy. (AR 47). Accordingly, the ALJ found Plaintiff not disabled and denied her application for Supplemental Security Income. (AR 48).

### C. Issues in Dispute

The issues in dispute in this case are: (1) whether the ALJ erred by including an ADA accommodation in Plaintiff's RFC; and (2) whether the ALJ erred in finding Plaintiff could perform the job of office helper.

#### 1. RFC Formulation

Defendant argues the ALJ included a special job accommodation under the Americans with Disabilities Act ("ADA") in his RFC assessment in violation of the Commissioner's own policies and persuasive authority. (ECF No. 15-1 at 6-8). Specifically, Defendant challenges the modification in Plaintiff's RFC that Plaintiff have the option to have a small companion dog with her while on the job. (*Id.*).

The Social Security Act ("SSA") and ADA provide two distinct ways to help people with disabilities. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999). The SSA provides monetary benefits to disabled individuals who are unable to engage in any kind of substantial gainful work that exists in the national economy and the ADA protects individuals from workplace discrimination based on disability. 42 U.S.C. §§ 423(d)(2)(A), 12112; *see Cleveland*, 526 U.S. at 801.

In particular, the ADA prohibits a covered entity from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). Discrimination can include refusal to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the covered entity can show that providing such an accommodation would "impose an undue hardship on the operation of the business." *Id.* at (b)(5)(A). A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A reasonable modification is a modification or adjustment "to the work environment, or to the manner or circumstances under which the position is . . . customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Conversely, the SSA requires no determinations about reasonable accommodation in order to determine whether an individual is disabled and entitled to benefits. *Cleveland*, 526 U.S. at 803. In fact, the Commissioner's policy prohibits consideration of whether a claimant can perform "other work that exists in significant numbers in the national economy . . . with accommodations, even if an employer would be required to provide reasonable accommodations under the [ADA]." SSR 11-2p, 2011 SSR LEXIS 2 at *19 (C.E. 2011).

An RFC is the most a person can do despite her limitations. 20 C.F.R. § 416.945(a)(1). "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 SSR LEXIS 5 at *1 (July 2, 1996). Typically, an RFC describes a claimant's abilities or limitations relating to general abilities required to engage in work, and the conditions

and characteristics of possible work environments. Here, for example, the ALJ found Plaintiff had the RFC to do jobs with a low stress work setting or work environment – which means an office type work setting in an office with no wide/open spaces. (AR 41). In contrast, the requirement that Plaintiff have the option to have with her, on the job, a small companion dog, imposes a condition on the employer beyond what is typical in the work environment. In other words, whereas other aspects of the RFC limit the types of jobs Plaintiff can perform due to her impairments, the companion dog part of the RFC requires modification to any job environment based on the nature of Plaintiff's anxiety. As conceded by Plaintiff, such modification to the work environment is an accommodation. (*See* ECF No. 11-1 at 6-7).

It does not follow, however, that the ALJ is prohibited from incorporating an accommodation into an RFC. *See Glaspy v. Berryhill*, 771 F. App'x 747, 747 (9th Cir. 2019) ("The regulations do not *require* that the ALJ incorporate [ADA] accommodations into the [RFC] assessment." (emphasis added)). Some courts have found that "the use of a service dog must be medically necessary to be considered in an RFC assessment." *See McGhee v. Berryhill*, 386 F. Supp. 3d 80, 87 (D. Mass. 2019) (collecting cases). Other courts have found that the ALJ must consider the claimant's use of a service dog when the evidence shows that the service dog was medically prescribed or recommended. *See Rentfro v. Colvin*, No. 14-cv-3015, 2015 WL 12868081, at *13 (C.D. Ill. Oct. 21, 2015) (finding the "ALJ's failure to address adequately the evidence regarding the use of the service dog [was] material" and noting that it was unclear "that a person could perform a cleaning job if her RFC required her to take a service dog with her to the job site"). In *Santos v. Colvin*, a Western District of Washington case, the Court found there was credible evidence that use of a service dog was necessary in order for the

plaintiff to work where the record indicated use of a service dog "has been of significant benefit to him in terms of his mental health symptoms" and that the plaintiff's doctor recommended a service dog at the plaintiff's request. *Id.*, No. 12-cv-05827-KLS, 2013 WL 5176846, at * 5 (W.D. Wash. Sept. 12, 2013). Notably, the record citations highlighted by that court appear to be from medical records—as opposed to the plaintiff's testimony or third-party function reports—and the recommendation came from the plaintiff's doctor.

Here, Plaintiff obtained a letter from Ross Jeffrey Quave, Licensed Clinical Social Worker ("LCSW"), recommending an emotional support animal to help "certain functional limitations," including panic attacks. (AR 1425). As an initial matter, an LCSW is not an acceptable medical source under the applicable regulations. 20 C.F.R. §§ 404.1502(a), 416.902, 416.913(a). Rather, an LCSW is an "other" medical source whose opinion is relevant to determining the severity of the claimant's impairments and how they affect the claimant's ability to function. 20 C.F.R. §§ 416.902, 416.913(d). Further, there does not appear to be any record evidence of the benefit of a companion dog beyond Mr. Quave's letter and Plaintiff's testimony that she "feel[s] better when [she has her] dog." (AR 61, 1425). Absent evidence of a "significant benefit" due to a companion dog or an acceptable medical source prescription or recommendation, a companion dog is not medically necessary. Accordingly, it was error for the ALJ to incorporate the option to have a companion dog into the RFC.

## 2. Step Five Analysis

Plaintiff argues the ALJ errantly considered the accommodations an employer must make to allow for a dog to be present in the workplace at step five of the sequential evaluation process. (ECF No. 11-1 at 5; *see* ECF No. 18 at 8). The Court does not address this argument because the Court finds that

it was error to incorporate the option to have a companion dog in the RFC.

### 3. Harmless Error

While the ALJ did err in assessing Plaintiff's RFC to include an option to have a companion dog, the error was harmless. Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

Assuming the ALJ had not erred and appropriately omitted the companion dog requirement, the ALJ would have proceeded to step five of the sequential disability evaluation process. At step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ can do this through the testimony of a VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The VE's testimony must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). As such, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Desrosiers v. Sec. of Health and Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring). The ALJ may omit from that description those limitations he finds do not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The first hypothetical the ALJ proffered to the VE accurately detailed

Plaintiff's functional limitations without the modification that Plaintiff have the option to have a companion animal with her:

> So here is the first hypothetical. Assume we have an individual of the claimant's age, education, past relevant work as a sales clerk with the ability to handle sedentary or light skilled work. However, there are [a] number of limitations. She could lift no more than five to ten pounds at a time and carry no more than five to ten pounds occasionally. She could only be seated for ten to 15 minutes at a time and could only be on her feet for ten to 15 minutes. So we have a ten to 15 minutes sit/stand option. However, with all of these postural changes, she could log either six hours seated or six hours on her feet either way depending upon the work demands.
>
> She could not handle any more than occasional stooping, bending, twisting or squatting. She could not work on the floor, that means no kneeling, crawling or crouching. She could not climb or descend full fights of stairs and could not do any overhead lifting or reaching due to the back. Also to protect the back, no more than frequent reaching, frequent handling and frequent fingering. The work would have to be at a low stress level, and here's what I mean by that; this is kind of an unusual one we don't hear too often. She could only do office type work, which means she could not work in wide open spaces like airport hang[a]rs, the outdoors, large high-ceilinged warehouses or factories. It must be in more of an office setting where the offices are not large open areas. So more of a cubicle, smaller office setting.

(AR 91-92). In response, the VE indicated there are a significant number of jobs in the national economy that a person with those hypothetical limitations could perform. (AR 92-94). The ALJ concluded that there were still a significant number of jobs in the national economy even with the additional limitation regarding a companion dog. (AR 47). As a result, the ALJ found Plaintiff not disabled. (*Id.*).

The parties do not dispute that the limitations posed in the first hypothetical are supported by the weight of the medical evidence. (*See* ECF Nos. 11-1, 15-1, 18, 20). As noted above, Plaintiff only takes issue with the

second hypothetical, arguing it was error to include the accommodations an employer must make to allow for a dog to be present in the workplace. (ECF No. 11-1 at 5-7). Accordingly, the ALJ would have found Plaintiff "not disabled" even had he not erred in assessing Plaintiff's RFC to include the companion dog option. *Payano v. Colvin*, No. 2:15-cv-00294-RFB-GWF, 2017 WL 4778593, at * 4 (D. Nev. Oct. 23, 2017) (finding harmless error where the ALJ omitted the need for a service dog in the hypothetical question to the vocational expert where the evidence failed to support that a service dog was necessary for Plaintiff to work). As such, the ALJ's error was harmless. *See Parra*, 481 F.3d at 747.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that the District Court **AFFIRM** the ALJ's decision finding Plaintiff not disabled and denying Supplemental Security Income, **DENY** Plaintiff's Motion for Summary Judgment, and **DENY** Defendant's Motion to Remand. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **January 6, 2020**. The document should be captioned "Objections to Report and Recommendations."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 13, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the

Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: December 19, 2019

Hon. Mitchell D. Dembin
United States Magistrate Judge